UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____x
JACK RYGER,                            :
                                       :
            Plaintiff,                 :        Case No.:
                                       :
      -against-                        :        **COMPLAINT**
                                       :
SUNBEAM PRODUCTS, INC., and            :
NEWELL BRANDS, INC.,                   :
                                       :
            Defendants.                :
                                       :
_____x

        Plaintiff Jack Ryger alleges the following against Defendants Sunbeam Products, Inc. and Newell Brands, Inc.:

## <u>INTRODUCTION</u>

        1.      This is an action for damages suffered by Mr. Ryger as a direct and proximate result of Defendants' negligent and wrongful conduct in connection with designing, developing, manufacturing, testing, packaging, promoting, marketing, distributing, labeling, and/or selling Sunbeam's heated mattress pad (the "Sunbeam Product") that burned him.

        2.      In December 2024 Mr. Ryger used the Sunbeam Product and was injured, receiving burns on his arm that caused (and continue to cause) scarring as well as significant pain and suffering that requires continuing treatment. There was no warning on the mattress pad that it could burn the user.

        3.      However,  in the years before the Sunbeam Product burned Mr. Ryger, Sunbeam (and its parent, Newell Brands, Inc.) had received numerous reports of other people being burned by similar Sunbeam heating pads and mattress pads and Defendants had been sued many times by people who, like Mr. Ryger, had been burned by the Sunbeam heated products. Sunbeam and Newell also were aware of numerous reports of burn injuries associated with the Sunbeam heating products from consumer web sites, and, upon

information and belief, from reports to Sunbeam's own website.

4.    Despite the serious injuries that were occurring to users of the Sunbeam heated products, Sunbeam and Newell failed to adequately warn Plaintiff of the serious risk of injury from using the Sunbeam Product.

5.    Mr. Ryger used the Sunbeam mattress pad and suffered severe burns and injuries as a result of the Sunbeam Product.

6.    Mr. Ryger brings claims for product liability and negligence.

## PARTIES

7.    Plaintiff Jack Ryger is, and was at all times herein alleged, a citizen of the State of New York. At all relevant times, Mr. Ryger has resided in New York, New York, in this District. He is domiciled in New York, in this District.

8.    Defendant Sunbeam Incorporated ("Sunbeam") is a Delaware corporation, doing business in New York and in this District. Sunbeam has its corporate headquarters at 2381 NW Executive Center Drive, Boca Raton, Florida.  At all relevant times, Defendant Sunbeam was engaged in the business of designing, developing, manufacturing, testing, packaging, promoting, marketing, distributing, labeling, and/or selling Sunbeam heated mattress pads and heating pads, including the Sunbeam Product.

9.    At all relevant times, Defendant Sunbeam was present and doing business in New York. Defendant Sunbeam transacted, solicited, and conducted business in New York and derived substantial revenue from such business. At all relevant times, Defendant Sunbeam expected or should have expected that its acts would have consequences in New York.

10.    Defendant Newell Brands, Inc. ("Newell") is a Delaware corporation, registered to do business in New York. Newell has its headquarters at 5 Concourse Parkway NE, Atlanta, Georgia. In the records of the New York Secretary of State, Defendant Newell has designated as its agent for service Corporation Service Company, 80 State Street, Albany,

New York 12207.

11.    Since 2015, Newell has owned, operated, and been the parent of Sunbeam.

12.    At all relevant times since 2015, Defendant Newell has been present and doing business in the State of New York.  At all relevant times, Defendant Newell was engaged in the business of designing, developing, manufacturing, testing, packaging, promoting, marketing, distributing, labeling, and/or selling Sunbeam heating products, including the Sunbeam Product that injured Plaintiff.

13.    At all relevant times since 2015, Defendant Newell transacted, solicited, and conducted business in New York and derived substantial revenue from such business. At all times relevant hereto, Defendant Newell expected or should have expected that its acts would have consequences in New York.

### JURISDICTION AND VENUE

14.    This Court has original jurisdiction of this civil action pursuant to 28 U.S.C.§ 1332(a) because the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs and is between citizens of different states.

15.    This Court has personal jurisdiction over Defendants pursuant to and consistent with the Constitutional requirements of Due Process in that each Defendant, acting through its agents or apparent agents, transacted business within New York,  made contracts within the state (including selling the Sunbeam Product in New York), and committed the tortious acts set forth in this Complaint within New York.

16.    The Court has personal jurisdiction over each Defendant because each Defendant is present in this state and District, such that requiring an appearance does not offend traditional notions of fair play and substantial justice.

17.    Plaintiff's claims arise in part from conduct Defendants purposefully directed to New York. On information and belief, Defendants' heating products, including the Sunbeam

Product, are sold throughout New York, including in this District, and through retailers in New York .

18.    On information and belief, Defendants avail themselves of numerous advertising and promotional materials regarding their defective products specifically intended to reach consumers in New York.

19.    Venue is properly set in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this District.

## FACTUAL ALLEGATIONS

20.    Defendants developed, designed, formulated, manufactured, packaged, labeled, advertised, marketed, distributed and sold the Sunbeam Product that injured Plaintiff.

21.    Defendants failed to adequately warn against the negative effects and risks associated with this product, including the risk of burns, even if the consumer used the product as directed, as alleged below.

22.    Defendants knew or should have known that the Sunbeam Product created an unnecessary risk of burning, skin irritation, and scarring.

23.    Defendants, or a third party acting on their behalf, maintained a database in which Defendants kept records of each instance in which a consumer, or a retailer, reported to Defendants that they had been injured by a Sunbeam heating pad or blanket, including burn injuries.

24.    Defendants also monitored the FDA's MAUDE adverse event reporting database about Sunbeam products (including certain heating pads) that were subject to adverse event reporting to the FDA. In connection with the MAUDE reports, Defendants were notified by the FDA about reports by consumers or retailers about injuries, including burns, associated with Sunbeam products that were subject to reporting, many of which used similar technology

and product features similar to the Sunbeam Product that injured Plaintiff. Defendants would receive those reports and often would respond to the FDA about the reports, frequently contesting that the Sunbeam product caused the injury and also often blaming the consumer for causing the injuries.

## Defendants Knew About The Burn Risks From Consumers Reporting That They Had Been Burned By Sunbeam Heating Products

25.     Before Plaintiff used, and was injured by, the Sunbeam Product, Defendants had received notices from consumers, the FDA, and other sources, that the Sunbeam heating products, including the Sunbeam Product, had injured consumers, including causing burns.

26.     For example, the following sample of burn reports were provided to Defendants around the time that they were made to the FDA and before Plaintiff here was burned by the Sunbeam Product:

| DATE REPORT RECEIVED | PRODUCT TYPE | MANUFACTURER IDENTIFIED | EVENT TYPE | INJURY TYPE | EVENT DESCRIPTION |
|---|---|---|---|---|---|
| October 19, 2022 | Heating Pad | Sunbeam | Injury | Burn | Consumer received a burn on her left butt cheek. |
| December 02, 2022 | Heating Pad | Sunbeam | Injury | Burn | Consumer alleged she received a burn on her back while using the heating pad. |
| January 06, 2023 | Heating Pad | Sunbeam | Injury | Burn | Consumer alleged using the heating pad and received burns on her right breast. |
| February 03, 2023 | Heating Pad | Sunbeam | Injury | Burn | Attorney's office filed notice alleging that a heating pad caused a burn to its client's body. |

| March 01, 2023 | Heating Pad | Sunbeam | Injury | Burn | Attorney's office filed letter alleging that a heating pad caused a burn to its client's body. |
|---|---|---|---|---|---|
| April 04, 2023 | Heating Pad | Sunbeam | Injury | Burn | Consumer alleged using the heating pad and received a burn on her body. |
| May 05, 2023 | Heating Pad | Sunbeam | Injury | Burn | Attorney's office filed notice alleging that a heating pad caused a burn to its client's hip area. |
| June 01, 2023 | Heating Pad | Sunbeam | Injury | Burn | Consumer alleged she was using her heating pad and received burns on her back. |
| July 06, 2023 | Heating Pad | Sunbeam | Injury | Burn | Consumer alleged using her heating pad and received a burn to her body. |
| August 11, 2023 | Heating Pad | Sunbeam | Injury | Burn | Consumer alleged using her heating pad for menstrual cramps and received a burn on her stomach. |
| September 07, 2023 | Heating Pad | Sunbeam | Injury | Burn | Attorney's office filed letter alleging that a heating pad caused a burn to its client's buttocks. |
| October 03, 2023 | Heating Pad | Sunbeam | Injury | Burn | Attorney's office filed letter alleging |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | that a heating pad caused a fire that burned its client's body. |
| November 02, 2023 | Heating Pad | Sunbeam | Injury | Burn | Attorney's office filed letter alleging that a heating pad caused a burn to its client's body. |
| December 01, 2023 | Heating Pad | Sunbeam | Injury | Burn | Consumer alleged using her heating pad while in bed then fell asleep and awoke to a burn on her back. |
| January 05, 2024 | Heating Pad | Sunbeam | Injury | Burn | Consumer alleged her husband was using the heating pad for back pain and received a burn on his lower back. |

**Defendants Also Knew about the Burn Risks from Consumers Suing
Sunbeam After Being Burned by the Sunbeam Heating Products**

27.    Defendants also knew about the dangers of the Sunbeam Product because they

had been sued numerous times in the years before Plaintiff was injured. In the following cases,

for example, Defendants were sued by consumers who alleged that they had been burned after

using the Sunbeam Product or a similar Sunbeam heating pad or heating blanket:

   a.    On March 8, 2022, a consumer sued Sunbeam in New York alleging
         that a Sunbeam heating pad seriously burned her. Carter v Sunbeam
         (Supreme Court of New York, Erie County, later removed to the
         Western District of New York). Sunbeam subsequently settled the
         plaintiff's burn injury claims;

   b.    On April 29, 2022, Denise Altomare sued Sunbeam in California
         alleging that she was burned on her lower back and required a skin
         graft after using a Sunbeam heating pad for 20 to 25 minutes at her
         home.  Altomare v Sunbeam, (Superior Court of California, Orange

County). Sunbeam settled that burn claim in December 2023, almost a year before Plaintiff here was burned;

c.    On July 1, 2022 a consumer named Veronica Seda sued Defendants alleging that she had been burned by a Sunbeam heating blanket. Seda v Sunbeam (Supreme Court of New York, Bronx County, later removed to federal court and then remanded back to state court); and

d.    On March 3, 2023 Ralph Taddeo sued Defendants in New York, Bronx County, alleging that Defendants' heating pad product burned him. The plaintiff alleged that Defendants had prior knowledge of the burn risk but failed to warn him and other consumers about that risk.  He alleged that as a result of the Sunbeam heating product, he sustained serious injuries necessitating medical treatment and was left with severely painful and permanently disfiguring burns to his body. Taddeo v Sunbeam (Supreme Court of New York, Bronx County). Defendants settled the plaintiff's burn claims and injury claims in January 2024, almost one year before Plaintiff here was injured.

### The Consumer Products Safety Commission Directed a Recall of Sunbeam Heating Pads After More Adverse Event Reports

28.    On March 16, 2023, the  Consumer Products Safety Commission ("CPSC")

announced a recall of more than 43,000 of Defendants' heating pads after receiving "13

reports of the blankets overheating."  See the CPSC Recall Notice from November 24, 2020

(https://www.cpsc.gov/Recalls/2023/Sunbeam-Heated-Blankets-Recalled-Due-to-Burn-and-

Fire-Hazards-Distributed-by-Star-Elite).

### Following The CPSC Recall Sunbeam Was Sued by More People Who Had Been Burned

29.    Following the CPSC Recall, Defendants continued to receive reports of many

people being burned by Sunbeam heating pads and blankets.

30.    For example, Sunbeam was named in these burn injury lawsuits after the CPSC

recall:

a.    On May 9, 2023, more than a year before Plaintiff was burned, Jeannette Kendall sued Sunbeam in Santa Clara, California, alleging that she was burned by a Sunbeam heating pad. Ms. Kendall alleged that she suffered substantial skin and tissue damage, permanent scarring, and was disfigured. Kendall v Sunbeam, Case Number 23-cv-416252 (Superior Court, Santa Clara, California).  The parties privately mediated the case and Sunbeam settled it;

b.      On May 15, 2023, Jacqueline Garcia sued Sunbeam after using a Sunbeam heating pad on her lower abdomen and suffering severe burns. Garcia v Sunbeam, Case Number 2023-LA-0000177 (Circuit Court, Winnebago County, Illinois). Upon information and belief, Sunbeam settled the burn claims, and the parties filed a Stipulation of Dismissal in October 2023, more than a year before Plaintiff here was burned;

c.      On June 21, 2023, Kristin Tiede sued Defendants in Florida for burns after using a Sunbeam Queen Size Heated Blanket. Tiede v. Sunbeam et al, Civil Action No 23-cv-80949 (Southern Dist. Florida). The case was later transferred to Texas;

d.      On July 28, 2023, Ryan Saboff, as the representative of the Estate of James Cain, sued Sunbeam in Florida, alleging that Mr. Cain was injured with severe burns on his legs after using Sunbeam's queen-sized heated blanket. Saboff v Sunbeam, 23-cv-01689 (Middle District Florida). Sunbeam settled the burn claims on November 26, 2024, approximately one month before Plaintiff here was burned;

e.      On July 31, 2023, Stephanie Jackson-Robinson sued Sunbeam in Illinois alleging that she was burned by a Sunbeam heating pad and had third degree burns even though she was using the Sunbeam product in a foreseeable manner and in a way that she had previously used it for two years. Jackson-Robinson v. Sunbeam, 23-LA-00000505, Circuit Court of the Nineteenth Judicial Circuit, Lake County, Illinois;

f.      On October 27, 2023, more than a year before Plaintiff was burned by Sunbeam's product, Tammy Hurd sued Sunbeam in Missouri alleging that she was burned after using Sunbeam's electric heating pad. Hurd v Walgreen and Sunbeam, (W. Dist. Missouri). She alleged that the Sunbeam product was defective and burned her. Upon information and belief, Sunbeam settled Ms. Hurd's burn claims on October 3, 2024, months before Plaintiff here was burned;

g.      On November 7, 2023 Anna Maria McCullers sued Sunbeam when she suffered third degree burns on her back after using a Sunbeam King Size Heating Pad. McCullers  v Sunbeam, Case Number CACE-23-020964 (Circuit Court, Seventeenth Judicial District, Broward County, Florida);

h.      On November 20, 2023, Tina Marie Martin sued Sunbeam for "severe and gruesome burn injuries" after using a king-size Sunbeam heating pad. Martin v Sunbeam,  23-cv-04579 (Eastern District Pennsylvania). Upon information and belief, Sunbeam settled the burn injury claims, and the plaintiff voluntarily dismissed the case on January 23, 2025;

i.      On December 7, 2023, more than a year before Plaintiff was burned, Maria Aguirre sued Sunbeam alleging that she was burned by a

Sunbeam heating pad, causing her "serious injuries". Among other things, the plaintiff alleged that Sunbeam failed to warn about the dangers of burns from the Sunbeam product. Sunbeam later removed the case to federal court, and the case was then remanded to state court in California. Aguirre v Amazon and Sunbeam, 24-cv-00218 (Central. Dist. California and then remanded to Los Angeles Superior Court at Norwalk);

j.      On December 19, 2023, a year before Plaintiff was burned, Samantha Angulo sued Sunbeam in California alleging that she was burned by a Sunbeam heating pad. Angula v Sunbeam, Case Number 23BBCV03008 (Superior Court of California, County of Los Angeles);

k.      On February 9, 2024, ten months before Plaintiff here was burned by a Sunbeam product, Stacey Sautter sued Sunbeam in Los Angeles alleging that a Sunbeam Heating Pad burned her on her back. Sautter v Sunbeam, Case No. 24-LB-CV- 00286 (Superior Court, Los Angeles County). In her complaint, Ms. Sautter set forth that in the two years before she was injured, Sunbeam had received notice of more than 100 burn injuries from consumers who used Sunbeam heating products. Documents in that case reveals that Sunbeam's corporate representative testified about burn injuries associated with Sunbeam heating products;

l.      On June 10, 2024, Tayler Goldstein sued Sunbeam for severe burns to her right hip and right upper thigh after using a Sunbeam heating pad. Goldstein v Sunbeam, Case No. 2024 -cv-30305 (District Court, Boulder County, Colorado) (later removed to federal court – 24-cv-01610 (D. Colorado)). In the complaint, Ms. Goldstein alleged that the Sunbeam product that burned her had no warnings or instructions. Sunbeam later settled Ms. Goldstein's burn claims. Ms. Goldstein filed her lawsuit months before Plaintiff here was injured;

m.     On June 23, 2024, Jack Zelkowitz sued Sunbeam in New York alleging that he was burned after using a Sunbeam heating pad. Zelkowitz v Sunbeam, Index Number 151255/2024 (Supreme Court, Richmond County). The case was filed approximately six months before Plaintiff here was burned. Sunbeam subsequently settled Mr. Zelkowitz's burn claims.

**Plaintiff Was Burned After Using the Sunbeam Product**

31.      In December 2024, Plaintiff was burned after using the Sunbeam Product.

32.     The following pictures show Plaintiff's arm after being burned by the

Sunbeam product:









33.    The following photo shows the labeling, instructions, and warnings on the Sunbeam Product that injured Plaintiff:



34.    The following picture shows a tag on the Sunbeam Product that injured Plaintiff:



35.    The following picture shows the power supply for the Sunbeam Product that injured Plaintiff:



36.    After being burned by the Sunbeam Product, Plaintiff sought medical treatment at Mount Sinai Hospital in this District. Plaintiff was diagnosed with an "arm burn".

37.    Upon discharge, he was instructed to: "Keep the burn covered with an ointment such as neosporin or aquafor. Monitor for signs of infection such as redness, fever, chills, or purulent discharge. Seek medical attention if [you] develop signs of infection."

38.    Following his initial visit, Plaintiff continued to suffer pain from the burn.

39.    In March 2025, three months after the Sunbeam Product burned him, Plaintiff had a follow-up visit and was still experiencing burns, pain, scarring, and discoloration where the Sunbeam Product had burned him, as shown in the following photo:



40.    Plaintiff's treating physician prescribed Gabapentin for the pain.

41.    Plaintiff has also received paraffin treatments on his arm in an attempt to reduce the pain he has experienced since the Sunbeam Product burned him.

42.     Plaintiff continues to experience pain in his arm and hand as a result of his injuries.

43.     The Sunbeam Product was defective and unreasonably dangerous to Plaintiff and ultimate users, consumers, or operators, including Plaintiff, at the time it was manufactured, assembled, tested, inspected, sold, and distributed by Defendants due to one or more of the following:

a.    When placed in the stream of commerce, the Sunbeam Product was manufactured, assembled, tested, inspected, sold, and/or distributed in such a manner that it had inadequate and/or defective safety devices and measures;

b.    When placed in the stream of commerce, the Sunbeam Product was manufactured, assembled, tested, inspected, sold, and/or distributed in such a manner that it did not have adequate safety devices to prevent damage and injury due to the defective condition of the Sunbeam Product;

c.    When placed in the stream of commerce, the Sunbeam Product was manufactured, assembled, tested, inspected, sold, and/or distributed in such a manner that it was capable of unexpectedly failing and/or overheating;

d.    When placed in the stream of commerce, the Sunbeam Product was manufactured, assembled, tested, inspected, sold, and/or distributed in such a manner that it failed to warn ultimate users, consumers, or operators, including Plaintiff, of the danger of the Sunbeam Product unexpectedly failing and/or overheating;

e.    When placed in the stream of commerce, the Sunbeam Product was manufactured, assembled, tested, inspected, sold, and/or distributed in such a manner that it failed to perform as safely as an ordinary consumer and/or user would expect when utilizing it in an intended and/or reasonably foreseeable manner;

f.    When placed in the stream of commerce, the Sunbeam Product was manufactured, assembled, tested, inspected, sold, and/or distributed in such a manner that caused it to unexpectedly overheat and catastrophically injure Plaintiff;

g.    When placed in the stream of commerce, the Sunbeam Product was manufactured, assembled, tested, inspected, sold, and/or distributed in such a manner it lacked and/or contained defective warnings which rendered it unreasonably dangerous to persons such as Plaintiff, who was an intended and/or foreseeable user of

the Sunbeam Product; and

h.    When placed in the stream of commerce, the Sunbeam Product did not have adequate warnings of the dangers associated with it or the dangers associated with the reasonably foreseeable and intended use of the Sunbeam Product.

44.    In omitting, concealing, and inadequately providing critical safety information  regarding the use of the Sunbeam Product, Defendants engaged in and continue to engage in conduct likely to mislead and injure consumers, including Plaintiff.

45.    Defendants knew or should have known that the Sunbeam Product was associated with burn risks, yet Defendants did not adequately warn consumers, including Plaintiff.

46.    Defendants did not properly warn consumers on the product label, inserts, or marketing materials that the Sunbeam Product can cause injuries, including burns.

47.    Defendants knew or should have known about the increased risks, but Defendants failed to include instructions or warnings on the product related to such risks.

48.    Defendants were receiving numerous reports from consumers (including lawsuits) alleging that they were injured by the Sunbeam Product and Sunbeam heating pads and blankets that were similar to the Sunbeam Product .

49.    Plaintiff detrimentally relied on Defendants' instructions and warnings, or upon the omission of those warnings and instructions.

50.    Defendants failed to warn or disclose the probability that Plaintiff will have an adverse burn reaction to the Sunbeam Product.

51.    Defendants spend thousands of dollars to advertise nationally via television, print ads, and on the internet, but do not sufficiently warn about any adverse reactions on their website, or social media, in their television commercials, in their print ads, or on the box.

52.    There are safer, economically feasible alternatives that would make the

Sunbeam Product safer and reduce the risk of burns. However, despite the known risks of burns from the Sunbeam Product, Defendants continued to manufacture and sell the unsafe Sunbeam Product.

53.     Defendants failed to warn about or disclose the true nature and extent of the risk of serious adverse reactions posed by the Sunbeam Product.

54.     Despite their knowledge, Defendants failed to warn or disclose to Plaintiff and other consumers the significant risk of burns associated with the Sunbeam Product.

55.     Defendants also knew or should have known that there is a substantial likelihood of serious bodily injury when using the Sunbeam Product. However, Defendants failed to warn or disclose this to Plaintiff and consumers.

56.     Defendants' warning label for the Sunbeam Product inadequately addresses and warns of potential adverse health risks associated with the use of the Product, as set forth in this Complaint. Even when such risks are mentioned, they are minimized and downplayed, further reducing the utility, if any, of the Products' warnings.

57.     Defendants actively marketed the Sunbeam Product to consumers knowing that it could cause serious and severe reactions to consumers and failed to warn or disclose this fact to Plaintiff, consumers, and the public in general.

58.     Defendants have an internal claims process in place to obtain liability releases and compensate consumers who are injured by the Sunbeam Product.

59.     Defendants' claim process is in place to cover up any injuries associated with the Sunbeam Product and to prevent consumers who are injured from taking legal action.

60.     Each Defendant has a duty to monitor the safety of its products and it is reasonable for each Defendant to conduct multiple trials and/or studies related to the safety of the Sunbeam Product. However, Defendants have failed to do so.

61.     Defendants knew or should have known of the high number of adverse

reactions and injuries related to the Sunbeam Product and similar Sunbeam heating products from a multitude of sources, including their internal claims process, FDA adverse event reports about similar Sunbeam heating products or similar products, and lawsuits about burns from the Sunbeam Product and similar products in which consumers alleged that they were burned, making Defendants' failures and conduct particularly egregious.

**COUNT I**
**STRICT PRODUCTS LIABILITY: DESIGN DEFECT**

62.    Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further allege as follows, except that Plaintiff excludes any allegations about Defendants acting fraudulently.

63.    Defendants are the manufacturers, designers, distributors, sellers, and/or suppliers of the Sunbeam Product.

64.    The Sunbeam Product manufactured and supplied by Defendants was defective in design or formulation in that, when it left the hands of the Defendants, the foreseeable risks of the product exceeded the benefits associated with its design or formulation, and it was more dangerous than an ordinary consumer would expect.

65.    The Sunbeam Product that Plaintiff used had not been materially altered or modified prior to its use.

66.    The Sunbeam Product is also defectively designed because it contains unreasonably dangerous heating elements and lacks adequate safety features to prevent burns during foreseeable use, though there are reasonably safer and effective alternatives to the heating elements and safety features used by Defendants in the Sunbeam Product.

67.    The Sunbeam Product is also defectively designed because it causes an unreasonably high rate of adverse burn reactions in the general populace.

68.    The Sunbeam Product is also defectively designed because its cautions and/or warnings are inadequate, as set forth in the Complaint, for the following reasons, among others:

a.  The Sunbeam Product failed to warn Plaintiff and other consumers about the burn risk, and about the reports received by Defendants about consumers being burned by the Sunbeam Product and similar Sunbeam products;

b.  Defendants minimized and downplayed the risks associated with the Sunbeam Product that they chose to disclose;

c.  Defendants failed to advise users of the Sunbeam Product about the product's risks and proper use; and

d.  The Sunbeam Product failed to provide adequate or reasonable instructions as to the use of the product.

69.    By marketing a product designed such that it was not reasonably safe, despite the availability of safer alternatives, and failing to sufficiently warn users of the dangers, Defendants were a substantial factor in causing Plaintiff's injuries.

70.    As a direct and proximate result of Plaintiff's use of the Sunbeam Product as manufactured, designed, sold, supplied, marketed and introduced into the stream of commerce by Defendants, Plaintiff suffered harm, damages and economic loss exceeding the jurisdictional minimum for diversity jurisdiction and will continue to suffer such harm, damages and economic loss in the future.

71.    As a direct and proximate result of the foregoing, Plaintiff is entitled to damages exceeding the jurisdictional minimum for diversity jurisdiction.

72.    Defendants' actions and omissions as identified in this Complaint constitute a flagrant disregard for human life.

**COUNT II**
**STRICT PRODUCTS LIABILITY:**
**FAILURE TO PROVIDE ADEQUATE WARNING**

73.    Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein, except that Plaintiff excludes any allegations about Defendants acting

fraudulently, and further allege as follows.

74.    The Sunbeam Product manufactured and supplied by Defendants was defective due to inadequate warnings or instructions because Defendants knew or should have known that the product created significant risks of serious bodily harm to consumers and they failed to adequately warn consumers of such risks.

75.    Defendants knew or, in the exercise of reasonable care, should have known that the Sunbeam Product presented a risk of severe reactions, including burns, and permanent scarring and other adverse reactions.

76.    Defendants failed to provide the warnings or instructions that a manufacturer exercising reasonable care would have provided concerning the risk of injuries from use of the Sunbeam Product, in light of the likelihood that the product would cause the harm claimed by Plaintiff and in light of the likely seriousness of that harm.

77.    Defendants, as the manufacturers of the Sunbeam Product, are held to the level of knowledge of an expert in the field of that type of heating product, and had a duty to warn consumers of the dangers associated with the Sunbeam Product but failed to do so.

78.    Defendants failed to reasonably or adequately warn users of the risks of the Sunbeam Product for the following reasons, among others:

a.  The Sunbeam Product failed to warn of the reports and rates of adverse reactions, including burns;

b.  Defendants minimized and downplayed the risks associated with the Sunbeam Product that they chose to disclose;

c.  The Sunbeam Product failed to display and advise of the product's risks and proper use in an effective and reasonable manner; and

d.  The Sunbeam Product failed to provide adequate or reasonable instructions as to the use of the product to avoid burns.

79.     The Sunbeam Product manufactured and supplied by Defendants was defective due to inadequate post-marketing warnings or instructions because, after Defendants knew or should have known of the risk of serious bodily harm, as set forth herein, from the use of the Sunbeam Product, Defendants failed to provide an adequate warning to consumers of the product, knowing the product could cause serious injury as set forth herein.

80.     Defendants' inadequate directions and warnings were a substantial factor in causing Plaintiff's injuries. As a direct and proximate result of Plaintiff's use of the Sunbeam Product as designed, sold, supplied, marketed and introduced into the stream of commerce by Defendants, Plaintiff suffered harm, damages, and economic losses exceeding the minimum amount for diversity jurisdiction and will continue to suffer such harm, damages, and economic loss in the future.

81.     As a result of Defendants' failure to adequately warn Plaintiff, Plaintiff is entitled to damages from Defendants exceeding the minimum amount for diversity jurisdiction. Further, Defendants' actions and omissions as identified in this Complaint constitute a flagrant disregard for human life.

### COUNT III
### NEGLIGENCE

82.     Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further allege as follows.

83.     Each Defendant had a duty to exercise reasonable care in designing, manufacturing, testing, marketing, and distributing into the stream of commerce the Sunbeam Product, including a duty to insure that the Sunbeam Product did not pose a significantly increased risk of injury to Plaintiff and other consumers.

84.     Each Defendant failed to exercise reasonable care in designing, manufacturing, testing, marketing and distributing into the stream of commerce the Sunbeam Product. Each Defendant knew or should have known that the Sunbeam Product presented a risk of severe

injuries, including burns, giving rise to pain and suffering, debilitation, and the need for medical treatment, and further complications, and therefore was not safe for use by Plaintiff or other consumers.

85.    Each Defendant failed to exercise reasonable care by failing to sufficiently warn consumers of the risks associated with the product.

86.    Each Defendant failed to exercise reasonable care in the instructions as to how to use the product, and the warnings for the product (or in the lack of warnings), all as set forth above in this Complaint.

87.    Despite the fact that each Defendant knew or should have known that the Sunbeam Product could cause severe reactions in consumers and therefore give rise to pain and suffering, debilitation, and the need for medical treatment, each Defendant continued to market and sell the Sunbeam Product.

88.    Despite the fact that each Defendant knew or should have known that the Sunbeam Product could cause severe reactions in consumers and therefore give rise to pain and suffering, debilitation, and the need for medical treatment, each Defendant failed to use ordinary care in warning Plaintiff and other consumers of this risk.

89.    As a direct and proximate result of each Defendant's negligence, Plaintiff has suffered significant damages (including burns) exceeding the minimum amount required for diversity jurisdiction, including physical injury, and pain and suffering, and will continue to suffer such damages in the future.

90.    Defendants' actions and omissions were malicious, wanton, oppressive, and/or reckless.

**<u>JURY DEMAND</u>**

Plaintiff demands a trial by jury.

## PRAYER FOR RELIEF

Plaintiff respectfully requests that the Court enter judgment in his favor against Defendants, and order that Defendants pay:

a.   Actual damages to Plaintiff;

b.   Punitive and treble damages, as allowable by law, to Plaintiff;

c.   Pre- and post-judgment costs, interest, and attorneys' fees;

d.   Such other and further relief as this Court may deem appropriate and equitable.

**DATED:**    New York, New York
October 27, 2025                Respectfully submitted,

**SQUITIERI & FEARON, LLP**

By:    /s/ Stephen J. Fearon, Jr.
Stephen J. Fearon, Jr.
205 Hudson Street
7th Floor
New York, New York 10013
Telephone:   (212) 421-6492
Facsimile:   (212) 421-6553
stephen@sfclasslaw.com

**ATTORNEYS FOR PLAINTIFF**